**BOUTIN DENTINO GIBSON
DI GIUSTO HODELL INC.**
Chris Gibson, SBN 073353
Maralee MacDonald, SBN 208699
555 Capitol Mall, Suite 1500
Sacramento, CA 95814-4603
(916) 321-4444

Attorneys for Receiver
Michael J. Quilling

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>           Plaintiff,<br>     v.<br><br>SECURE INVESTMENT SERVICES, INC., AMERICAN FINANCIAL SERVICES, INC., LYNDON GROUP, INC., DONALD F. NEUHAUS, and KIMBERLY A. SNOWDEN,<br><br>           Defendants. | Case No.  2:07-cv-01724 LEW CMK<br><br>STIPULATED MOTION FOR ORDER AUTHORIZING RECEIVER TO POOL ASSETS; ORDER |

The parties, at the request of Michael J. Quilling, the Receiver appointed in these proceedings, ("Receiver"), respectfully submit this Stipulated Motion for Order Authorizing Receiver to Pool Assets and Order.

**INTRODUCTION**

1.     This case involves, among other things, at least 42 separate life insurance policies with a combined value of death benefits exceeding $56 million. The Receiver believes that there are approximately 500 investors who have a potential claim to those policies, their proceeds, and the other receivership estate assets collected according to this Court's order of August 24, 2007. Case law in the Ninth Circuit dictates that those assets ought to be pooled for the investors' collective benefit.

PDF created with pdfFactory trial version www.pdffactory.com

**FACTUAL BACKGROUND**

2. On August 24, 2007, this Court entered an order ("Receivership Order") appointing Michael J. Quilling as Receiver for Secure Investment Services, Inc., American Financial Services, Inc., and Lyndon Group, Inc. (collectively, the "Receivership Entities"). In his capacity, the Receiver has complete and exclusive control, possession, and custody of all Receivership Assets, including "the assets, monies, securities, choses in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated, of the Receivership Entities and/or any entities they own or control . . ." (Receivership Order at ¶ 1).

3. The Receiver is currently investigating the Receivership Entities and marshaling the Receivership Assets to benefit the creditors and investors in this case. Based on a preliminary review of the Receivership Entities' books and records, it appears to the Receiver that investor funds were commingled and treated as a common fund to pay premiums and other expenses.

4. As part of his investigation, the Receiver will determine whether the Receivership Entities are current on their policy premiums. Even if they are, they are believed to have only a combined total of approximately $65,000.00 of cash currently available. The monthly premium obligations, however, are believed to total approximately $150,000.00 a month. At this point, it appears that the Receiver only has funds to carry the 42 insurance policies for a short period of time. Without another source of income, some of those policies are likely to lapse.

5. It is, therefore, the Receiver's position that all assets of the Receivership Entities need to be pooled for the common benefit of their investors and creditors. This is consistent with the controlling law in this Circuit as well as the majority of jurisdictions in the United States. *See, e.g., Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.,* 205 F.3d 1107, 1116 (9th Cir. 2000); *United States v. Real Property Located at 13328 & 13324 State Highway 75 North,* 89 F.3d 551, 553 (9th Cir. 1996); *SEC v. Forex Asset Mgt.,* 242 F.3d 325, 331 (5th Cir. 2001); *Liberte Capital Group v. Capwill,* 148 Fed. Appx. 426, 434-36 (6th Cir. 2005). All funds constituting receivership assets, regardless of how previously allocated, should be held to

PDF created with pdfFactory trial version www.pdffactory.com

1  constitute one fund. All the insurance policies should also be placed into a common fund, with
2  investors no longer having a specific interest in a particular policy. Instead, each investors'
3  interest should be transformed into a claim against the receivership estate's pooled funds. Death
4  benefits, as they are received, should be paid into the pooled fund and used to pay administrative
5  costs—including premium payments—during the course of the receivership estate or until
6  further order of this court.

7        6.  Pooling all receivership assets will benefit the Receivership Estate as a whole
8  because it prevents a situation where some investors are winners and others are losers based
9  upon the sheer luck of how the Receivership Entities allocated their funds. In addition, pooling
10 will allow the Receiver to seek bank financing to obtain a line of credit that can be secured by a
11 first lien position against the pooled policies as a whole. The Receiver has successfully been
12 involved in this type of financing arrangement in other receivership cases and has already
13 reached an agreement with a bank regarding these proceedings. Details of the proposed
14 financing arrangement are the subject of a separate motion filed contemporaneously.

15       7.  Until that financing can be arranged, pooling will provide an immediate solution
16 for the shortage of cash needed to pay policy premiums as they become due. Specifically, the
17 Receiver could pay premiums and other administrative costs from the pooled funds to keep
18 policies from lapsing, thereby preserving the receivership estate's most valuable assets. If, on
19 the other hand, the policies are not maintained then investors will likely lose tens of millions of
20 dollars that they invested with the Receivership Entities.

21 **LEGAL AND EQUITABLE AUTHORITY**

22       8.  Sitting in equity, this Court is a "court of conscience." *Wilson v. Wall*, 73 U.S.
23 83, 90 (1867). The District Court, therefore, enjoys "broad deference" in supervising orderly and
24 efficient administration of the Receivership Assets for the benefit of creditors and investors.
25 *Topworth Int'l, Ltd.,* 205 F.3d at 1115-16. Although the relief sought by this motion may be
26 broad-sweeping, the authority of the Court to grant such relief is likewise extremely broad.

27       9.  When specifically faced with a business failure or fraud scheme affecting persons
28 across a widespread area, this Court has discretion to commingle the assets and consolidate legal

PDF created with pdfFactory trial version www.pdffactory.com

title at the Receiver's request. *See, e.g., Cunningham (as Trustee for Ponzi) v. Brown*, 265 U.S.1 (1924) (discussing principles of tracing and upholding right of trustee to commingle assets and make pro-rata distribution to similarly situated victims); *Topworth Int'l, Ltd.,* 205 F.3d at 1115-16; *Real Property Located at 13328 & 13324 State Highway 75 North*, 89 F.3d at 553. The authority to pool assets has been recognized even where funds were held by separate corporate entities. *SEC v. Forex Asset Mgt.*, 242 F.3d 325 (5th Cir. 2001).

10. Pooling assets for a pro-rata distribution has been the approach of an overwhelming majority of courts faced with similar situations. *See Topworth Int'l, Ltd.,* 205 F.3d at 1115-16; *Real Property Located at 13328 & 13324 State Highway 75 North*, 89 F.3d at 553; *see also Cunningham*, 265 U.S. at 13; *SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88-89 (2d Cir. 2002); *Forex Asset Mgt.*, 242 F.3d at 331; *U.S. v. Durham*, 86 F.3d 70, 72-73 (5th Cir. 1996); *U.S. v. Vanguard Inv. Co.*, 6 F.3d 70, 73 (4th Cir. 1993).

11. In a case very similar to this one, the Sixth Circuit directed the pooling and pro-rata distribution of viatical interests in a "life settlement" business. *Liberte Capital Group*, 148 Fed. Appx. at 434-36. This same approach has been followed in *Quilling v. Trade Partners, Inc.,* Case No. 1:03-CV-0236 (W.D. Mich.) [Docket No. 51, 52-1, 90], and *SEC v. ABC Viaticals, Inc.,* Case No. 3:06-CV-2136 (N.D. Tex.) [Dkt. No. 7].

12. The Receiver seeks an order of this Court authorizing the Receiver to use all Receivership Assets to pay premiums and other costs and expenses in the administration of this receivership estate for the benefit of the Receivership Entities' investors and creditors.

[Next Page]

PDF created with pdfFactory trial version www.pdffactory.com

**STIPULATION**

WHEREFORE, THE PARTIES STIPULATE to the entry of an order of this Court that the Receiver is authorized to use all Receivership Assets to pay premiums and other costs and expenses in the administration of this receivership estate for the benefit of the Receivership Entities' investors and creditors.

BOUTIN DENTINO GIBSON DI GIUSTO HODELL INC.

Dated: August 29, 2007        By /s/ Maralee MacDonald
                                 Maralee MacDonald
                                 Attorneys for Receiver


SECURITIES EXCHANGE COMMISSION

Dated: August 29, 2007        By /s/ John S. Yun (as authorized on August 29, 2007)
                                 Thomas J. Eme
                                 John S. Yun
                                 Attorneys for Plaintiff Securities
                                 Exchange Commission


KENNY, SNOWDEN & NORINE

Dated: August 29, 2007        By /s/ Mark Norcross (as authorized on August 29, 2007)
                                 Mark Norcross
                                 Attorneys for Defendants
                                 Donald Neuhaus and
                                 Kimberly Snowden

**ORDER**

IT IS SO ORDERED.

Dated: September 6, 2007

/s/ Ronald S. W. Lew
Honorable Ronald S. W. Lew
United States District Court Judge

- 5 -
STIPULATED MOTION FOR ORDER AUTHORIZING RECEIVER TO POOL ASSETS; ORDER

120717.1

PDF created with pdfFactory trial version www.pdffactory.com